UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HUGO ABSALON SUAREZ, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13-cv-0778 (KBJ) |
| CAROLYN W. COLVIN, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

In February of 2005, the Social Security Administration ("SSA") learned that Plaintiff Hugo Absalon Suarez, a recipient of Social Security benefits, had been deported to his native Mexico following a period of incarceration for gun and alien transportation convictions. By statute, Plaintiff's conviction of a gun possession offense and his subsequent deportation automatically disqualified him from receiving Social Security retirement benefits, *see* 42 U.S.C. § 402(n); 8 U.S.C. § 1227(a)(2)(C); consequently, after receiving notice of Plaintiff's deportation, the SSA terminated his benefits (*e.g.*, social security payments and Medicare health insurance). Plaintiff has filed the instant lawsuit pro se, seeking to challenge the SSA's termination of his retirement benefits without a pre-termination hearing, and he has also launched a series of attacks through the administrative process. First, Plaintiff unsuccessfully sought relief directly from the SSA; then, he appealed to an administrative law judge ("ALJ"), and presently, his appeal of the most recent ALJ decision rejecting the pre-termination

hearing argument is pending before the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council").

Before this Court at present is Defendant's motion to dismiss the instant complaint for failure to exhaust administrative remedies.  (ECF No. 6.)  This Court referred this matter to a Magistrate Judge for full case management, and that judge recommended that Defendant's motion be denied, and that the case be permitted to proceed, on the grounds that it would be futile to require exhaustion of remedies under the circumstances presented here.  (ECF No. 15.)  Defendant filed a timely objection to the Report and Recommendation, arguing that exhaustion should not be excused (ECF No. 16), to which Plaintiff filed a response (ECF No. 19.)

On September 30, 2015, this Court issued an Order that declined to accept the recommendation of the Magistrate Judge.  (*See* ECF No. 20.)  This Memorandum Opinion explains the reasons for that order.  In sum, after a thorough review of the Report and Recommendation, the parties' briefs, the record, and established case law, this Court finds that the requirements for waiving the prudential exhaustion requirement have not been satisfied in this case.  Accordingly, and as explained fully below, Defendant's motion to dismiss the complaint has been **GRANTED**, and Plaintiff's case has been **DISMISSED** for lack of exhaustion.

I.   **BACKGROUND**

In October of 1998, Plaintiff, a Mexican national who had been legally residing in the United States for a number of years, was arrested on a number of felony charges and subsequently pled guilty to transporting an alien within the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(II), and possessing a firearm as

a felon, in violation of 18 U.S.C. § 922(g)(1).  *See United States v. Absalon*, 210 F.3d 369, 2000 WL 294449, at *1 (5th Cir. 2000) (table) (affirming Plaintiff's "guilty-plea convictions and sentences for transporting an alien within the United States and being a felon in possession of a firearm").  (*See also* Compl., ECF No. 1, at 1; Ex. XXVIII to Compl., Sentence Monitoring Computation Data ("Sentence & Detainer Rpt."), ECF No. 1-4, at 45.)[1]  At the time of his imprisonment, Plaintiff was collecting Social Security retirement benefits, and he continued to do so until the spring of 1999, when the SSA learned that he was incarcerated and suspended his benefits.  (Ex. XV to Compl., Order of Appeals Council Remanding Case to ALJ (Feb. 26, 2010) ("Remand Order"), ECF No. 1-1, at 38.)  Notably, the SSA maintains that it overpaid Plaintiff by approximately $2,803 in retirement benefits during this period  (Remand Order at 38), because the law prohibits payment of Social Security benefits to incarcerated individuals, *see* 42 U.S.C. § 402(x)(1)(A),

Plaintiff claims that the SSA informed him that he could request reinstatement of his benefits upon his release from prison by visiting a local Social Security Office.  (Ex. I to Compl., E-mail from Hugo Absalon Suarez to Erika Webber, Consular Assistant (Mar. 8, 2005), ECF No. 1-1, at 2.)  However, when Plaintiff was released from prison on December 23, 2004, prison authorities immediately turned him over to the U.S. Immigration and Naturalization Service ("INS") pursuant to a deportation detainer that was issued as a result of Plaintiff's gun conviction.  (Compl. at 3; Sentence & Detainer

---

[1]  Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

Rpt.)  INS then immediately deported Plaintiff to Mexico.  (Compl. at 3; Sentence & Detainer Rpt.)

When the SSA learned of Plaintiff's deportation in February of 2005, it invoked 42 U.S.C. § 402(n), which bars payment of benefits to certain deportees, including those convicted of weapons offenses, and terminated Plaintiff's previously-suspended benefits.  (Ex. XXIV to Compl., ALJ Decision (Aug. 2, 2011), ECF No. 1-4, at 33–34.)  Although the SSA did not hold a pre-termination hearing, it did afford Plaintiff the opportunity to object in writing to the termination decision.  (Ex. III to Compl., Ltr. from Carolyn L. Simmons, Assoc. Comm'r for Cent. Operations, to Hugo Absalon (Sept. 6, 2005), ECF No. 1-1, at 5.)  In February of 2006, Plaintiff requested that the SSA reconsider its termination of his benefits, and on March 28, 2006, the SSA upheld its decision.  (Ex. II to Compl., Request for Reconsid., ECF No. 1-1 at 4; Ex. VI to Compl., Ltr. from Carolyn L. Simmons, Assoc. Comm'r for Cent. Operations, to Hugo Absalon (Mar. 28, 2006), ECF No. 1-1, at 16.)

By letter dated April 23, 2006, Plaintiff expressed his "disagree[ment] with the decision" on his request for reconsideration regarding termination of his benefits, and asked for a hearing before an ALJ.  (Ex. VIII to Compl., Ltr. from Hugo Absalon Suarez to SSA (April 23, 2006), ECF No. 1-1, at 19.)  The ALJ granted Plaintiff's hearing request, which also included potential consideration of the SSA's claim that Plaintiff had been previously overpaid, but Plaintiff ultimately could not attend the scheduled hearing because he was unable to obtain a visa to reenter the United States.  (Remand Order at 39.)  When Plaintiff did not appear at the scheduled hearing, the ALJ dismissed Plaintiff's case on the grounds that Plaintiff had "admitted to not living in the

4

United States and was[,] therefore, no longer eligible to receive benefits." (*Id.* (internal quotation marks omitted).) On appeal, the Appeals Council vacated this initial ALJ decision, finding that it was procedurally improper due to the ALJ's seeming failure to reach the merits of Plaintiff's benefits termination claim and the fact that the ALJ did not undertake to address the overpayment question at all. (*See id.* at 39–40 (remanding the matter to the ALJ for "additional development and further consideration[,]" and commanding the ALJ to "issue a decision based on the evidence of record regarding whether the [SSA] properly ceased [Plaintiff's] benefits due to deportation and concerning the issue of overpayment").

On remand, the ALJ attempted to schedule a supplemental hearing, but Plaintiff was again unable to attend because of his visa situation. (Ex. XXIII to Compl., Ltr. from Hugo Absalon to SSA (Apr. 26, 2011), ECF No. 1-4, at 25–26.) As such, and at Plaintiff's request, the ALJ issued "a decision on-the-record" without a hearing (*see id.*), in which the judge made two findings: first, that Plaintiff was not liable for the overpayment of Social Security benefits to him that had occurred because of the lag between when he was incarcerated in October of 1998 and when the SSA learned of his incarceration, and second, that the complete termination of all retirement benefits based on Plaintiff's deportation was consistent with the law. (ALJ Decision at 33–34.) Plaintiff appealed the latter part of the ALJ's decision to the Appeals Council on August 2, 2011, asserting that the SSA had denied him due process by terminating his benefits without providing him a pre-termination opportunity to be heard. (Ex. XXV to Compl., Notice of Appeal, ECF No. 1-4, at 37–39.)

On May 29, 2013—while his administrative appeal was still pending (*see* Compl. at 15)—Plaintiff filed the instant pro se complaint, in which he reasserts that the SSA denied him due process of law with respect to the termination of his retirement benefits. On July 24, 2013, Defendant filed a motion to dismiss for lack of subject matter jurisdiction arguing that Plaintiff's complaint should be dismissed because of the ongoing administrative appeal. (Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 6.)

As mentioned above, this Court referred the entire case for full case management to a Magistrate Judge, and the Magistrate Judge subsequently issued a Report and Recommendation that recommended that Defendant's exhaustion-related motion to dismiss be denied on the basis of futility. (*See* R. & R., ECF No. 15, at 11–12.) To support this conclusion, the Report and Recommendation referenced a written "Notice" that the Appeals Council sent to Plaintiff the day after the complaint in the instant case was filed, in which the Council notified Plaintiff of its decision to review the ALJ's ruling based on a number of factors and stated that it was providing notice of its "plan" to reverse the ALJ's ruling in part. (*Id.* at 11; Ex. 3 to Decl. of Patrick J. Herbst ("Appeals Council Notice"), ECF No. 6-2, at 19 (explaining the Council's view that the ALJ's "decision finding that you are 'not without fault' in causing the overpayment" was erroneous and should be reversed, but that the Council also intended to "affirm the Administrative Law Judge's findings that the Social Security Administration was correct in ceasing your benefits"). The Notice also informed Plaintiff that he had the opportunity to "send us more evidence or a statement about the facts and the law in your case within 30 days of the date of this letter." (Appeals Council Notice at 19.)

Pointing to this letter, the Magistrate Judge's Report and Recommendation maintained that "[t]he record supports a finding that requiring Plaintiff to await the decision of the Appeals Council would be futile" (R. & R. at 11), both because the Council had already indicated the outcome of Plaintiff's appeal in its written notice (*id.*) and also because eight months had elapsed since the Council sent the notice and it still had not issued a final decision (*id.* at 12).

Defendant timely filed with this Court an objection to the Report and Recommendation (*see* Def.'s Objs. to R. & R., ECF No. 16), to which Plaintiff responded (*see* Pl.'s Resp. to [] Objs., ECF No. 19). The Magistrate Judge's Report and Recommendation, all of the parties' filings related to Defendant's motion are now before this Court, and the Court has reviewed the matter *de novo*. *Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013).

## II. LEGAL STANDARDS

As a general matter, federal courts have jurisdiction to review cases arising under Title II of the Social Security Act after a "final decision of the Commissioner of Social Security made after a hearing[.]" 42 U.S.C. § 405(g). The applicable regulations specify four administrative review levels through which a claim for social security benefits must pass—initial determination, reconsideration, ALJ hearing, and Appeals Council review—before any decision is deemed "final." 20 C.F.R. § 404.900(a)(1-5). It is undisputed that Plaintiff here has passed through the first three administrative levels, but not the fourth, as the Appeals Council has yet to issue a final decision on Plaintiff's appeal of the ALJ's ruling.

According to the Supreme Court, "[e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). Moreover, "[t]he Supreme Court has construed 42 U.S.C. § 405(g) as having jurisdictional and non-jurisdictional exhaustion components"; that is, "[t]he requirement that a plaintiff must first present his claim to the agency is jurisdictional and cannot be waived, while the requirement that the plaintiff must complete the agency review process is non-jurisdictional and may be waived." *Cost v. Soc. Sec. Admin.*, 770 F. Supp. 2d 45, 48-49 (D.D.C. 2011) (citations omitted), *aff'd*, No. 11-5132, 2011 WL 6759544 (D.C. Cir. Dec. 2, 2011). Thus, a motion to dismiss the complaint for failure to complete agency review is properly brought as one under Rule 12(b)(6), in contrast to a motion for dismiss for failure to present a claim in the first instance. *See, e.g., Cost*, 770 F. Supp. 2d at 49 (construing the agency's motion to dismiss "as one under Rule 12(b)(6) for failure to state a claim" where the agency alleged that the claimant "did not exhaust the non-jurisdictional requirements").

To survive such a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). And although exhaustion is typically an affirmative defense, "it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." *Thompson v. Drug Enf't Admin.*, 492 F.3d 428, 438 (D.C. Cir.

2007); *see also, e.g.*, *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees of Univ. of D.C.*, 56 F.3d 1469, 1476 (D.C. Cir. 1995) (affirming dismissal of complaint for failure to exhaust where complaint contained "no basis for concluding that resort to the grievance procedures would have been futile").

With respect to waiver of a non-jurisdictional exhaustion requirement such as the one in section 405(g), it is well-established that the exhaustion mandate "may be waived in only the most exceptional circumstances." *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 432 (D.C. Cir. 1994) (internal quotation marks and citation omitted). Consequently, the established grounds for waiving the exhaustion requirement are few and far between—courts have held that waiver is appropriate only if the issue raised in the lawsuit is entirely collateral to the matter on appeal; or if the plaintiffs demonstrate that they face irreparable injury if the exhaustion requirement is enforced against them; or if it would be futile to require administrative exhaustion. *See Barbour v. Soc. Sec. Admin.*, No. 12cv1049, 2012 WL 2572777, at *1 (D.D.C. June 26, 2012); *see also Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 (D.D.C. 2008) (citing *Bowen v. City of New York*, 476 U.S. 467, 483–85 (1986)). Furthermore, to invoke the futility ground for waiver successfully, the plaintiff must show that the agency "evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 106 (D.C. Cir. 1986) (citations omitted).

### III.   ANALYSIS

As explained, the Report and Recommendation in this matter concluded that "the circumstances presented [in Plaintiff's complaint] justify waiver of the exhaustion

requirement [because] requiring Plaintiff to await the decision of the Appeals Council would be futile." (R. & R. at 11.) In its Objection, the SSA points out that "the R&R did not address whether all three of the conditions for waiving exhaustion of administrative remedies are satisfied in this case[]" (Def.'s Obj. at 1), and with respect to the futility analysis in particular, the SAA asserts that, not only has the Appeals Council not yet made its final decision in Plaintiff's case, there are likely to be additional administrative processes to come, given the Council's stated intention to reverse the ALJ's decision with respect to the overpayment issue, which will probably be followed by a remand of the case (*id*. at 4). The SAA's written objection also maintains that Plaintiff is partially responsible for the delay in deciding his appeal because the Appeals Council "paused its proceedings [after Plaintiff filed this suit] to avoid any potential conflict with this court's action." (*Id.* at 5.)

As an initial matter, this Court disagrees with the SSA's suggestion that there is a conjunctive, three-factor test for waiver of the exhaustion requirement as a matter of law. (*See* Def.'s Obj. at 1; *see also id*. at 3 (asserting that "[a] court may waive the requirement to exhaust administrative remedies if three conditions are satisfied" (citation omitted).) It appears that there are "several types of exceptions to the exhaustion requirement" rather than a three-pronged waiver test, 33 Charles Alan Wright & Charles H. Koch, Jr., Fed. Prac. & Proc. Judicial Review § 8398 (1st ed.), and, indeed, scores of cases have considered whether or not to waive the exhaustion requirement on the basis of an assertion of futility alone. *See, e.g.*, *Petit v. U.S. Dep't of Educ.*, 578 F. Supp. 2d 145, 152 (D.D.C. 2008) ("[B]ecause ultimate denial of the plaintiffs' sought-after relief is certain, the plaintiffs may bring suit notwithstanding

10

their failure to exhaust their administrative remedies[.]" (internal citation omitted)); *Callicotte v. Carlucci*, 698 F. Supp. 944, 948 (D.D.C. 1988) (denying motion to dismiss for failure to exhaust where resort to administrative remedies would have been futile). Nevertheless, this Court agrees with the SSA that Plaintiff has failed to allege any possible basis for waiver, and thus has not satisfied the applicable standards for waiving non-jurisdictional exhaustion.

First of all, this Court sees nothing in the complaint (or in the Report and Recommendation for that matter) that addresses whether the issue raised in the lawsuit is collateral to the matter the agency is considering. *See Duggan v. Bowen*, 691 F. Supp. 1487, 1507–08 (D.D.C. 1988) ("Plaintiffs challenge of HHS [] policy presents a legal issue 'substantially collateral' to the right of members of the class to receive home health care benefits and consequently meets the standard for waiver of the exhaustion requirement."). Apparently this is no mere oversight; as the Report and Recommendation acknowledges, the challenge that Plaintiff makes in the instant lawsuit raises precisely the same legal issues regarding "the agency's failure to conduct a [pre-termination] hearing" that Plaintiff asked the agency to reconsider. (R. & R. at 11.)

The Magistrate Judge was also correct to conclude that the complaint's allegations regarding Plaintiff's age and medical condition are insufficient to "meet the demanding standard for demonstrating irreparable harm." (R. & R.at 12 n.6 (citing *Beattie v. Astrue*, 845 F. Supp. 2d 184, 193–93 (D.D.C. 2012)).) And there is more: insofar as the law quite clearly cuts against Plaintiff on the underlying merits of his pre-termination hearing claim, this Court finds that Plaintiff cannot demonstrate that the Court's failure to waive the exhaustion requirement will injure him *at all*, much less

irreparably.² Put another way, Plaintiff has not offered—and this Court has not found—any authority for the proposition that a court's refusal to lift a procedural bar that otherwise prevents a plaintiff from advancing a patently meritless claim harms that plaintiff in any respect.

Finally, turning to the futility ground, it is clear to this Court that Plaintiff has failed to mount the extraordinarily high hurdle that the D.C. Circuit has erected for plaintiffs who wish to have the exhaustion requirement excused on this basis. *See, e.g.*, *Commc'ns Workers*, 40 F.3d at 432. Plaintiff's contention that the SSA improperly terminated his benefits is currently pending before the Appeals Council, and nowhere in the complaint does Plaintiff allege any facts showing that the Council will certainly and inevitably rule against him. *See UDC Chairs Chapter*, 56 F.3d at 1475 ("The mere probability of administrative denial of the relief requested does not excuse failure to pursue administrative remedies, rather [plaintiffs] must show that it is certain that their claim will be denied." (alteration in original) (internal quotation marks and citations omitted)). To the extent that the Report and Recommendation gleans such certainty from the "Notice" that the Appeals Council issued after Plaintiff filed his lawsuit, that document is not properly recognized in the context of a motion to dismiss because it is a matter outside of the parties' pleadings. *See* Fed. R. Civ. P. 12(d). And even if this Court chose to rely on that document (and thereby converted the instant motion to one for summary judgment), the text of the Notice plainly announces only the Council's

---

² The Social Security Act and its implementing regulations unambiguously require the SSA to suspend payment of benefits to any alien who is deported following conviction for specific offenses, including illegal possession of a firearm, *see* 42 U.S.C. § 402(n); 8 U.S.C. § 1227(a)(2)(C), and suspension of benefits under this provision is "automatic[.]" *Marcello v. Bowen*, 803 F.2d 851, 855 (5th Cir. 1986); *see also* 42 U.S.C. § 402(n); 20 C.F.R. § 404.464. Thus, despite Plaintiff's vigorous contentions to the contrary, a deportee simply does not have any right to an in-person hearing before the SSA terminates retirement benefits under Section 402(n) of Title 42.

12

future intentions, and the Council also specifically indicates its willingness to consider any additional arguments or evidence that Plaintiff wishes to proffer. (*See* Appeals Council Notice at 19.)  Thus, properly understood, the Notice does not give rise to a plausible inference that the Council is inevitably going to rule against Plaintiff.  *See Commc'ns Workers*, 40 F.3d at 432 (court can excuse exhaustion requirement only "where resort to administrative remedies would be futile because of the certainty of an adverse decision") (internal quotation marks and citation omitted); *see also Cost*, 770 F. Supp. 2d at 51 (holding that exhaustion would not be futile where there was no record evidence that the SSA would be unwilling to reconsider claim on remand).

      This Court is also not persuaded, on the facts presented here, that the length of time that it has taken the Appeals Council to act on Plaintiff's appeal warrants a futility finding.  To be sure, according to the complaint, the Appeals Council had been pondering Plaintiff's claims for a while prior to the filing of the instant lawsuit.  (*See* Compl. at 15–16.)  But a lengthy administrative appeal process, standing alone, is not a satisfactory reason to excuse exhaustion.  *See Randolph-Sheppard Vendors of Am.*, 795 F.2d at 108 (noting that "[t]he usual time and effort required to pursue an administrative remedy" is insufficient to justify waiving the exhaustion requirement).  And as the SSA points out (Def.'s Obj. at 5), Plaintiff's filing of the instant lawsuit may have short-circuited the ongoing administrative process, contributing to the delay about which Plaintiff complains.  *Cf. Alexander v. Shalala*, No. 93cv3618, 1994 WL 532650, at *1 (E.D. La. Sept. 27, 1994) (noting that the Appeals Council has taken the position that it cannot rule on request for review where related civil case was pending).  Thus, far from establishing that exhaustion is futile and that Plaintiff's case should be permitted to

proceed in federal court, the facts here indicate that this Court's dismissal of the instant action will facilitate prompt administrative review, by ensuring that this case no longer poses any obstacle to the continuation and resolution of the pending administrative processes.

**IV.    CONCLUSION**

For the reasons stated above, this Court agrees with the SSA that none of the three established bases for waiver of the exhaustion requirement is satisfied here, and as a result, the Court has determined that it "should not waive the exhaustion requirement in this case." (Def.'s Obj. at 1.)  Therefore, as provided in the Order this Court issued on September 30, 2015, Defendant's motion for to dismiss has been **GRANTED** and Plaintiff's case has been **DISMISSED**.

DATE:  October 27, 2015                              *Ketanji Brown Jackson*
                                                     KETANJI BROWN JACKSON
                                                     United States District Judge